[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and defendant, whose maiden name was Firth, intermarried at Groton, Connecticut on June 1, 1974; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there is one minor child issue of the marriage, Christopher R. Durnall, born November 21, 1981; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation; that neither party is receiving assistance CT Page 5370-CCC from the State of Connecticut or local agency therein.
According to the plaintiff, the marriage was doing well until June, 1990 when plaintiff found notes and cards defendant received from a woman he had relations with. When confronted with this information, defendant admitted having had a sexual relationship with his secretary, Melissa Bullock, that lasted about six months and which ended in 1989. This led to arguments, strained relationship between the parties and physical violence by the defendant toward the plaintiff and towards their youngest child, Chris.
Plaintiff tried to maintain the relationship until the children graduated from high school. She tried to get defendant to attend counseling but he refused. Plaintiff eventually decided the marriage was over and instituted this dissolution proceeding.
Defendant claims that the breakdown of the marriage resulted from lack of communication between the parties; that plaintiff always argued with the defendant in front of the children about his extra-marital affair; that plaintiff became upset with the constant travel and absence from home required by defendant's employment and that plaintiff made many purchases for the home which defendant could not afford. Further he claims that his altercation with his son, Chris, was due to his son threatening and pushing him.
The plaintiff met the defendant in the summer of 1972 while he was in the military service. At the time of their marriage plaintiff was the office manager of Boyer Realty. After she was three or four months pregnant, plaintiff left her employment, as was previously agreed by the parties, to stay in the home to raise her children.
When the parties youngest child Chris started the 1st grade, plaintiff became employed as a library technical assistant for the Groton Board of Education. She worked six hours a day earning $10.82 per hour. She is presently so employed. According to her financial affidavit dated August 2, 1996, plaintiff has a gross weekly income of $228.00 and a net weekly income of $139.00.
Plaintiff, who was born March 13, 1954, is a high school graduate and appears to be in good health. Although plaintiff CT Page 5370-DDD has secretarial skills, she has not applied for any secretarial positions. However, her continued employment appears good.
The defendant who was born December 9, 1952, is presently employed as a marine systems engineer II at Vitro Corp., a consulting engineering service for the United States. He has been employed with Vitro Corp. and its predecessor for 15 years. Defendant's employment requires that he travel extensively which results in his being away from home frequently.
Defendant claims his base gross annual salary is $43,000. However, because of overtime he had an average gross weekly income of $1,073.32 for the period January 1, 1996 through July 19, 1996. His net average weekly income for said period was $804.67.
In addition, defendant receives a gross weekly veteran's disability payment of $98.00 for a service connected injury to his knee. His average net weekly benefit is $94.36. Therefore, defendant's total average gross weekly income is $1171.32 and his average net weekly income is $898.03. His history indicates that his income will continue to increase. (See Plaintiff's Exhibits A B).
Defendant has received a 30% permanency rating for his knee injury and has undergone 9 operations to his knee. Notwithstanding his knee condition, defendant's continued employment seems secure. Also, he has greater potential than the plaintiff to increase his income and develop assets.
The parties purchased their marital residence located at and known as 14 Morse Avenue, Groton, Connecticut around 1981. Presently the home has a value between $95,000 and $100,000 and is subject to mortgages totalling $84,000 to $86,000.
The defendant has a retirement account with Vitro Corp, which is valued at $13,890.83 as of July, 31, 1996. (Plaintiff's Exhibit A.) The plaintiff has an IRA of $1,100 and a retirement plan with the Groton Board of Education presently valued at $3,000. The parties also own a 1989 Volvo 240 DL and a 1986 Ford F150, several bank and credit union accounts and life insurance policies.
From the evidence presented, the defendant is found to CT Page 5370-EEE be more at fault for the breakdown of the marriage. His extra-marital affair and refusal to undergo counseling in an effort to save his marriage caused the plaintiff to institute this proceeding. Accordingly, a decree dissolving the marriage of the parties is ordered.
After considering the factors in Connecticut General Statutes § 46b-61, 46b-62, 46b-81, 46b-82 and 46b-84 in light of the evidence and findings, the following orders are entered which the court finds to be fair and equitable:
 1. The parties shall share joint custody of the minor child with primary custody to the plaintiff subject to reasonable rights of visitation to the defendant.
 2. The defendant shall pay to the plaintiff the sum of $190.00 per week as support for said child.
 3. The defendant shall immediately transfer all his right, title and interest in the marital premises to the plaintiff. The plaintiff shall assume and agree to pay all the mortgages and encumbrances thereon and to keep and save the defendant harmless from any claims made thereon.
 4. The defendant shall vacate the premises within two weeks. He shall remove and own the bedroom set and his tools. Plaintiff shall own and keep the remaining household furnishings and effects.
 5. The plaintiff shall keep and own the 1989 Volvo 240 DL, the Charter Oak Savings and Credit Union and the Norwich Pequot Teachers Credit Union accounts free of any claim from the defendant.
 6. The plaintiff shall continue to maintain health insurance coverage for the minor child as is available through her employment. The defendant shall reimburse the plaintiff for one-half of the premium for said child's health insurance.
 If health insurance for said minor child is no longer available to the plaintiff through her employment, the defendant shall provide health insurance for the minor child as is available through his employment.
CT Page 5370-FFF
 In all events the parties shall share equally all unreimbursed expenses for the minor child's health care.
 7. The defendant shall own the 1986 Ford J150 automobile. He shall keep and maintain his work-related life insurance and the Chubb life insurance on his life, unencumbered, with the plaintiff as irrevocable beneficiary until her death, remarriage or the completion of defendant's support and alimony obligations as herein set forth. Defendant shall provide plaintiff with proper authorization for her to ascertain whether said policies are in full force and effect.
 8. The defendant shall assign to the plaintiff by a Qualified Domestic Relations Order (QDRO) one-half of the present accrued value of defendant's employment pension. The plaintiff shall be named survivor beneficiary of the pension benefits in the event defendant dies prior to his retirement and the commencement of his benefits.
 9. The defendant shall pay to the plaintiff the sum of $175 as periodic alimony until defendant's support obligation for his minor child is terminated. Thereafter, defendant shall pay to the plaintiff the sum of $250 as periodic alimony until plaintiff reaches the age of 62.
 All alimony payments provided for herein shall terminate at the times specified or upon the death of the plaintiff, her remarriage or cohabitation with an unrelated male, which ever is the first to occur.
10. Each party shall pay their own attorney's fees.
Vasington, J.